# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

EQUARN WHITE,

                                          Plaintiff,

          v.                                 9:17-CV-1094
                                                  (LEK/ATB)

RANDEL SMITH, et al.,

                                          Defendants.

---

EQUARN WHITE, Plaintiff, pro se
ERIK B. PINSONNAULT, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge. Plaintiff brought this civil rights action asserting various constitutional claims arising from his confinement at Upstate Correctional Facility ("Upstate"). (Complaint ("Compl.")) (Dkt. No. 1).

Presently before the court is certain defendants' motion to dismiss portions of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 19). Plaintiff responded in opposition to the motion, and defendants filed a reply. (Dkt. No. 24, 26). For the reasons set forth below, this court recommends denying defendants' motion to dismiss with respect to the Eighth Amendment conditions of confinement claims against defendant Smith, but granting defendants' motion to dismiss with respect to the medical indifference claim against defendant Waterson and the retaliation claim against defendant Nelson, for failure to state a claim.

While defendants' motion to dismiss was pending, plaintiff filed a motion to amend his complaint, which defendants have opposed. (Dkt. No. 28, 32). In the interest of judicial efficiency, this court will also address plaintiff's motion in this report-recommendation.[1] For the reasons set forth below, this court recommends denying plaintiff's motion to amend, but also recommends granting plaintiff leave to file a revised proposed amended complaint within thirty days of the court's adoption of this report-recommendation, solely to incorporate his conditions of confinement claims against defendants Maynard, Winston, Marinelli, P. Baker, H. Baker, Barkman, Scott, Gallagher, Fournier, Eddy, and Gokey that had previously been dismissed without prejudice in Judge Kahn's November 17, 2017 initial order, based on the statute of limitations. (Dkt. No. 4). In his Proposed Amended Complaint, plaintiff has provided documentation that he had timely initiated the administrative grievance process with respect to those claims, and that he had not received final determinations on those grievances until at least October 2014. Therefore, plaintiff has presented a colorable argument in favor of equitable tolling with respect to those claims.

## I.    **Facts Relevant to Motion to Dismiss**

Judge Kahn's November 17, 2017 Decision and Order summarized the facts as alleged in plaintiff's complaint, so I will briefly restate only the facts relevant to the motion to dismiss. (Dkt. No. 4, at 19-23, 28-29, 36-37). During his incarceration at Upstate, plaintiff was housed in Cell 15, next to another inmate who continually banged

---

[1] Typically, a motion to amend a pleading is non-dispositive in nature, and can be decided directly by the magistrate judge. *See Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). However, because plaintiff's motion to amend is so intertwined with defendants' motion to dismiss, we will make recommendations to the district court on both motions.

and kicked his cell walls and door. (Compl. at 26). This relentless noise prevented plaintiff from sleeping more than two to three hours per night. (Id.) This disruptive behavior lasted from approximately May 2014 until September 2014. (*Id.*)

Plaintiff was subsequently transferred to another correctional facility. (Compl. at 31). Plaintiff returned to Upstate on December 29, 2015, and asked not to be placed near the disruptive inmate. (*Id.*) Defendant Smith ignored this request and placed plaintiff in Cell 18, which shared a common wall with the disruptive inmate. (Compl. at 31). The disruptive inmate immediately began kicking and banging on the cell "all day." (*Id.*) This situation continued for almost one month, despite plaintiff's frequent requests that defendant Smith move him. (Compl. at 32).

Plaintiff was assigned a new cell on or about December 30, 2015. (Compl. at 45). Between December 30, 2015 and April 21, 2016, plaintiff experienced a rodent infestation, with mice and rats "continuously" running in and out of his cell. (*Id.*) On April 16, 2016, a "mouse with red eyes" bit plaintiff on his left big toe, causing him to bleed. (Compl. at 46). When defendant Waterson, an Upstate nurse, answered plaintiff's emergency sick call, plaintiff showed him the bleeding bite mark and requested a tetanus shot. (*Id.*) Defendant Waterson told plaintiff that he would get him a bandage, but did not return that night. (*Id.*) The next day, another nurse provided plaintiff with antiseptic. (*Id.*) On April 18, 2016, plaintiff submitted a sick call slip, and defendant Waterson picked up it that evening. (*Id.*) The next morning, a different nurse was making sick call rounds, and informed plaintiff that he was not on the sick call list. (*Id.*) Plaintiff concluded that defendant Waterson had intentionally destroyed his sick call slip. (Compl. at 46-47). Later that day, plaintiff received an emergency sick call

after he experienced severe stomach pain and coughed up blood. (Compl. at 47-48).
He was provided with headache and stomach medication, along with ointment for his
bite. (*Id*.) The treating nurse denied plaintiff's request for a tetanus shot. (Compl. at
48).

During his confinement at Upstate, plaintiff submitted a number of public record
requests pursuant to the New York State Freedom of Information Law ("FOIL").
(Compl. at 31-33). The records requests were handled by defendants Bernier, LeClere,
and Nelson. (*Id*.) Plaintiff claims that these three defendants delayed and denied his
requests, and imposed exorbitant fees for access to some requested video recordings, in
violation of state law. (*Id*.) He also alleges that defendant Nelson destroyed one or
more of the requested videos. (Compl. at 39). Plaintiff contends that these wrongful
actions were done in retaliation for his prior grievances. (Compl. at 31-33).

## II.  **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain
sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*.,
550 U.S. at 555).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's
consideration is limited to the factual allegations as stated in the complaint, documents
attached to the complaint as exhibits or incorporated into the complaint by reference,

4

and matters of which the court can take judicial notice.[2]  *Portillo v. Webb*, No. 16 Civ.

4731 (VEC/GWG), 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (quoting *Brass*

*v. Am. Film Tech*., 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum*

*Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  A court may take judicial notice of a

public record pursuant to Fed. R. Evid. 201(b).  *Rothman v. Gregor*, 220 F.3d 81, 92

(2d Cir. 2000).

## III.    Eighth Amendment Claims

### A.    Legal Standards

#### 1.    Conditions of Confinement

The Eighth Amendment protects prisoners from "cruel and unusual punishment"

in the form of "unnecessary and wanton infliction of pain" at the hands of prison

officials.  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97,

104 (1976).  The constitutional prohibition against cruel and unusual punishment

includes the right to be free from conditions of confinement that impose an excessive

risk to an inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994);

*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  To establish an Eighth

Amendment claim based on unsafe or medically inappropriate living conditions, a

plaintiff must establish that (1) he was incarcerated under conditions which posed a

substantial risk of serious harm, and (2) prison officials acted with deliberate

indifference to his health or safety.  *See Farmer*, 511 U.S. at 834.

---

[2] In opposition to defendants' motion, plaintiff filed a number of new exhibits, including a third party affidavit and grievance documents. (Dkt. No. 24-1). None of the documents appear relevant to the issues raised in defendants' motion to dismiss.  Accordingly, this court's recommendations regarding defendants' motion are based only on plaintiff's original complaint.

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation.  *Hathaway*, 37 F.3d at 66 (quoting *Wilson v. Seiter*, 501 U.S. at 298).  "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim."  *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 199) (citing *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (only those deprivations denying "the minimal civilized measures of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation) (internal quotations and citations omitted).

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.  *Farmer*, 511 U.S. at 835.  In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety.  *Hathaway*, 37 F.3d at 66.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Id*.

### 2.    Medical Care

A claim of constitutionally inadequate medical care is also brought under the Eighth Amendment.  In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to

6

evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). As in the above Eighth Amendment "conditions" analysis, the first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). However, there are some additional factors that must be consider in the medical care context.

### a.     Objective Element

The first question that the court must address is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing

7

treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### b.    Subjective Element

In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof at trial that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a

8

defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).

## B.    Application

### 1.    Conditions of Confinement (Smith)

Plaintiff alleges that defendant Smith refused his requests to be transferred away from the disruptive inmate for at least a month, and made no attempt to address an infestation of rodents in another cell that lasted several months. (Compl. at 31-32, 45). He contends that these cell conditions violated the Eighth Amendment because they prevented him from sleeping and exposed him to unsanitary conditions that led to him being bitten by a mouse.[3]

In support of their motion, defendants contend that inmate-generated noise is a

---

[3] In his response to the motion to dismiss, plaintiff contends that another Eighth Amendment claim against defendant Smith, for excessive lighting of his cell, survived Judge Kahn's November 17, 2017 Decision and Order. (Dkt. No. 24, at 6). However, the only claims remaining against defendant Smith after Judge Kahn's order were related to plaintiff's noise and rodent complaints. (Dkt. No. 4, at 28-29). This court has reviewed plaintiff's original complaint, and finds no reference to defendant Smith's personal involvement in plaintiff's complaints about lighting. (Compl. at 133). In addition, the only alleged impact from the alleged excessive cell illumination was a deterioration in plaintiff's eyesight between a 2009 eye examination and his most recent eye examination in March 2015. (*Id.*) Therefore, even if plaintiff had raised the allegation against a specific defendant, such as defendant Smith, dismissal would have still been appropriate for failure to state a claim. *See Quick v. Graham*, No. 9:12-CV-1717, 2016 WL 873853, at *8 (N.D.N.Y. Jan. 8, 2016) (plaintiff was required to show more than conclusory allegation of serious harm resulting from cell illumination).

condition typical to all prisons, and that plaintiff's discomfort from that noise does not rise to the level of a constitutional claim. *See Griffin v. Coughlin*, 743 F. Supp. 1006, 1018 (N.D.N.Y. 1990) (inmate-generated noise at prison that did not cause any physical damage to plaintiff did not give rise to a constitutional claim). However, plaintiff has alleged that the noise was atypical in both intensity and duration, and that it led to mental and physical health problems caused by sleep deprivation. (Compl. at 19). At this stage of the proceeding, plaintiff has sufficiently alleged that defendant Smith's failure to address the excessive noise caused by an adjacent inmate satisfied the objective element of an Eighth Amendment claim. "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (citing, *inter alia*, *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367 (N.D.N.Y. 2010) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights.")).

Likewise, unsanitary conditions at a prison facility can pose an unreasonable risk of serious damage to inmate health that may rise to the level of an Eighth Amendment violation. *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (allegations of rodent infestation at correctional facility may rise to level of constitutional violation); *Solomon v. Nassau Cty*, 759 F. Supp. 2d 251 (E.D.N.Y. 2011) (rodent infestation that was more than "temporary or occasional" could give rise to an Eighth Amendment claim). Therefore, plaintiff has met the objective element of these claims.

Plaintiff has also satisfied the subjective element at this stage of the proceeding, by alleging that defendant Smith was aware of the noise and unsanitary conditions and

failed to address them.  Plaintiff alleged that he raised both issues with defendant

Smith, along with the impacts on his health.  Plaintiff has also alleged that defendant

Smith was regularly on duty in the area during the period of excessive noise and the

rodent infestation.  *See Gaston*, 249 F.3d at 166 (plaintiff sufficiently alleged

defendant's knowledge of unsanitary conditions by asserting that defendants made

daily rounds of cell block, and this assertion was not contradicted by the record).  In his

response to defendants' motion, plaintiff also alleged that defendant Smith was aware

of an order to exterminate the rodents, but those allegations are not found in the

complaint and did not impact this court's recommendation to deny defendant Smith's

motion to dismiss. (Dkt. No. 24, at 5).

### 2.    Medical Care (Waterson)

For purposes of this motion, a rodent bite that draws blood and presents a

potential risk of infection is a sufficiently serious medical condition that meets the

objective element of an Eighth Amendment claim against defendant Waterson.[4]  *See*

*Solomon*, 759 F. Supp. 2d at 259 ("Given the severity of harm that could result from

contracting a disease such as rabies from a rodent bite, a reasonable jury could find that

a rodent bite constitutes a serious harm").

Even though plaintiff may meet the objective element, dismissal of the claim

against defendant Waterson would still be appropriate, because plaintiff failed to satisfy

the subjective prong of the deliberate indifference standard.  Plaintiff claims that

---

[4] In contrast, the delays in plaintiff's treatment caused by defendant Waterson would not meet the objective element necessary for a deliberate indifference claim.  Plaintiff has conceded that other nursing staff responded with treatment within a day or less on both occasions, and plaintiff has not identified any serious medical complications that resulted from the delays.

defendant Waterson responded to his emergency sick call request, but never returned with a promised bandage. (Compl. at 46). At most, defendant Waterson was negligent by not meeting plaintiff's immediate medical need. However, it is well settled that negligence is insufficient to support a deliberate indifference claim. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). The deliberate indifference standard "requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, leads to liability." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

Plaintiff's second deliberate indifference claim, that defendant Waterson must have destroyed his sick call slip because he was not on the next day's sick call list, is wholly speculative. However, even accepting the allegation that defendant Waterson destroyed the sick call slip as true, plaintiff has not established that Waterson knew of and disregarded an excessive risk to plaintiff's health and safety, or that Waterson "intended wantonly to inflict pain." *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 325 (W.D.N.Y. 2007). Plaintiff had previously received antiseptic medication for his rodent bite, and plaintiff informed other staff that he did not consider his follow-up sick call request to be an emergency, because he did not experience severe symptoms until the following evening.[5] (Compl. at 47).

Accordingly, plaintiff has failed to allege that defendant Waterson acted with a sufficiently culpable state of mind when he failed to provide requested medical attention

---

[5] When a different nurse asked plaintiff why he had not requested emergency attention earlier, plaintiff told her that ". . . it wasn't emergency then as I was not spitting up blood . . . ."). (Compl. at 47).

for plaintiff's rodent bite. Therefore, this court recommends that defendant Waterson's motion to dismiss be granted.[6]

## IV. __Retaliation__

### A. __Legal Standard__

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendant. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Id.* at 380. The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett*, 343 F.3d at 137. Participation in the grievance process by an inmate is clearly protected conduct in the context of a retaliation claim. *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 367 & n. 21 (S.D.N.Y. 2011) (collecting cases).

---

[6] Plaintiff repeats his allegations against defendant Waterson in his Proposed Amended Complaint, discussed *infra*, but does not add any new allegations that would alter this court's recommendation of dismissal.

### B.    Application (Nelson)

Plaintiff alleges that defendant Nelson imposed exorbitant reproduction costs for his FOIL requests, destroyed a requested video tape, and delayed responses to other requests, all in retaliation for grievances that he filed against Nelson and defendant Bernier. (Compl. at 38-45).  The filing of grievances is constitutionally protected conduct.  However, it is unclear whether failure to follow proper FOIL procedures, including destruction of records, rises to the level of an adverse action. *See Burroughs v. Petrone*, 138 F. Supp.3d 182, 207 (N.D.N.Y. 2015) (". . . destruction of video/audio tapes that purportedly support plaintiff's claims of alleged violations of his civil rights does not constitute sufficiently adverse action to be cognizable as a retaliation claim."); *Webb v. Ashburn*, No. 96 Civ. 0325 (SAS), 1997 WL 118355, at *5-6 (S.D.N.Y. Mar. 17, 1997) ("The only possible [constitutional] claim arising from the alleged FOIL violations is a deprivation of property claim in violation of the Fourteenth Amendment's Due Process Clause . . . ." but plaintiff had not established a property interest because ". . . FOIL documents need only be produced after a request and investigation have been made.").

The court need not resolve that issue here, because plaintiff has failed to allege an adequate causal connection between the grievances and defendant Nelson's alleged mishandling of his FOIL requests.  He devoted a minimal portion of his complaint to defendant Nelson, focusing instead on the alleged retaliatory actions of defendants Bernier and LeClerc.  To the extent that plaintiff makes the conclusory allegation that defendant Nelson was retaliating for multiple grievances filed against defendant

Bernier, he has failed to state a claim.[7]  "As a general matter, it is difficult to establish

one defendant's retaliation for complaints against another defendant."  *See, e.g., Hare v.*

*Hayden*, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) (citing

*Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009)) (dismissing retaliation claim against

a corrections officer when the only alleged basis for retaliation was a complaint about

an incident involving another corrections officer); *Roseboro*, 791 F.Supp. 2d at 369

(plaintiff has failed to provide any basis to believe that a corrections counselor would

retaliate for a grievance that she was not personally named in).

Plaintiff's complaint does reference at least one grievance filed against defendant

Nelson, on March 28, 2016.[8] (Compl. at 44).  He also describes a lengthy and

unprompted conversation between defendant Nelson and plaintiff about the outstanding

FOIL requests that occurred in April 2016, but plaintiff does not allege that defendant

Nelson ever expressed any retaliatory motive for the delays. (Compl. at 50-53).  As set

forth in the complaint, defendant Nelson advised plaintiff to "write Albany" to complain

about the fees, stated that she was merely following policies that had been established

by her predecessor Bernier, and requested an apology for being referred to as Bernier's

---

[7] In his response to defendants' motion to dismiss, plaintiff appears to allege that defendant Nelson told him that "since you want to be a smart ass my boss told me to put referral in because you wrote her up." (Dkt. No. 24, at 12-13). In his complaint and proposed amended complaint, plaintiff assigned this same quote to defendant LeClerc. (Compl. at 43; Dkt. No.28-2., at 105).  Although plaintiff's response is confusing, it seems likely that plaintiff is simply inartfully repeating his allegation that defendant Nelson destroyed videotape of this exchange with LeClerc. (Compl. at 43).  Accordingly, this court has relied upon the language in the complaint in making its recommendation of dismissal.

[8] The complaint also references a grievance filed against defendant Nelson dating back to April 2011. (Compl. at 44).  In his response to the motion to dismiss, plaintiff corrects this date to April 2016. (Dkt. No. 24, at 10).  This correction does not alter the court's analysis above.

"flunky." (*Id.*)  When plaintiff refused to apologize, defendant Nelson walked away. (Compl. at 53).  Plaintiff alleges that defendant Nelson destroyed a requested video tape more than one year later, in August 2017.  Plaintiff's retaliation claims against defendant Nelson, based upon grievances filed against her more than one year earlier, fail to state a causal connection between the protected conduct and the adverse action. These claims are therefore conclusory, and should be dismissed.[9]

## V.   **Motion to Amend Complaint**

On August 2, 2018, plaintiff filed a motion pursuant to Fed. R. Civ. P. 15(a) for leave to file an amended complaint. (Dkt. No. 28).  The motion includes a proposed amended complaint comprised of 308 enumerated paragraphs and numerous subparagraphs distributed over 253 pages. (Dkt. No. 28-2, "Pr. Am. Compl.").  Many of the proposed amendments duplicate or expand upon the claims set forth in plaintiff's original complaint, add approximately 33 new defendants, and include extensive legal citations[10] and policy arguments in support of plaintiff's claims.

### A.   **Legal Standard**

A motion to amend is governed by Federal Rule of Civil Procedure 15, which states, in pertinent part, that the court should "freely give leave [to amend a pleading] when justice so requires."  (Fed. R. Civ. P. 15(a)(2)).  Generally, the court has discretion whether or not to grant leave to amend a pleading. *Foman v. Davis*, 371 U.S. 178, 182

---

[9] Plaintiff repeats his allegations against defendant Nelson in his Proposed Amended Complaint, discussed *infra*, but does not add any new allegations that would alter this court's recommendation of dismissal.

[10] In his declaration filed in support of the motion to amend, plaintiff recognized that inclusion of legal and policy arguments in the complaint was inappropriate, but believed it was the best method of presenting his arguments to the court. (Dkt. No. 28-1, at 4).

(1962).  Leave to amend should generally be granted "unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust Oleum Corp*., 244 F.3d 104, 110 (2d Cir. 2001).  The court considers two factors when determining whether a party has unduly delayed a request to amend a pleading: (1) the duration of the delay and (2) the explanation offered by the movant for the delay. *Collins v. Caron*, No. 9:10-CV-1527, 2013 U.S. Dist. LEXIS 44297, at *15 (N.D.N.Y. March 28, 2013) (*citing Evans v. Syracuse City School District*, 704 F.2d 44, 46–47 (2d Cir. 1983).

The court must also examine whether there will be prejudice to the opposing party.  The court considers whether permitting the amendment would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction.  *Collins v. Caron*, at *16 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (internal punctuation omitted)).

The Court has discretion to deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (citation omitted).  "The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." *Id*.

Where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted).  A proposed

17

amendment is futile when it would fail to state a viable claim, in that it would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Milanese v. Rust Oleum Corp.*, 244 F.3d 103, 110 (2d Cir. 2001). If the proposed amended complaint would be subject to "immediate dismissal" for failure to state a claim or on some other ground, the Court will not permit the amendment. *Jones v. New York State Div. of Military and Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999). A proposed amended complaint seeking to assert claims barred by the statute of limitations is futile and must be denied. *Malesko v. Correctional Services Corp.*, 229 F.3d 374, 382–84 (2d Cir. 2000), *rev'd on other grounds*, 534 U.S. 61 (2001). In New York, claims brought under 42 U.S.C. § 1983 must be brought within three years of the events giving rise to the cause of action. *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

In the case of proposed amendments where a defendant is to be added, the Court must also look to Rule 21 of the Federal Rules of Civil Procedure. Rule 21 states that the court may permit a party to be added to an action "at any time, on just terms." Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *United States v. Commercial Bank of North America*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotations omitted). Addition of parties under Rule 21 is guided by the same standard as a motion to amend under Rule 15. *Fair Housing Development Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972).

### B.    Application

Defendants contend that plaintiff's motion to amend should be denied because his Proposed Amended Complaint violates the requirement of Fed. R. Civ. P. 8(a)(2) that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." (Dkt. No. 32, at 12-13). Plaintiff's expansive Proposed Amended Complaint certainly runs afoul of this requirement, by adding unnecessary details and arguments in an attempt to bolster his claims.

Defendants also contend that plaintiff's proposed amendments are futile, at least insofar as they assert claims against defendants Smith, Waterson, Bernier, Nelson, and LeClerc. Since the remaining defendants have not been served and are not represented, defense counsel has understandably refrained from addressing the specifics of those claims. (Dkt. No. 32-1 ¶ 4). Therefore, out of deference to plaintiff's pro se status, it falls to the court to review plaintiff's proposed amendments for futility.

### 1.    Futile Claims

This court finds that most of plaintiff's proposed amendments are futile because they fail to correct the defects identified in Judge Kahn's November 17, 2017 Decision and Order. Judge Kahn dismissed certain causes of action for failure to state a claim: deprivation of personal property without due process against several defendants; medical indifference claims against several Upstate staff for discontinuing plaintiff's medication and improper treatment of a rash, foot fungus, and shingles; claims for deprivation of meals, barber shop access, and commissary privileges against several defendants; sexual harassment claims against defendant Nelson; due process and equal protection claims against several defendants arising from plaintiff's security

19

classification and enrollment in the Sex Offender Counseling and Treatment Program ("SOCTP")[11]; and various claims alleging denial of access to the courts, conspiracy, and supervisory liability.

Judge Kahn dismissed each of these claims without prejudice, but plaintiff's proposed amendments do not alter the constitutional analysis set forth in his Decision and Order. (Dkt. No. 4, at 18-41). Plaintiff has supplemented each of these claims with copious but largely irrelevant details, and appears to have named as a defendant anyone with a tangential connection to those facts, regardless of their personal involvement in the alleged constitutional violation. Accordingly, the proposed amendments do not improve the substance of those claims, and such claims would be unlikely to withstand a motion to dismiss. The futility of most of plaintiff's amendments supports denial of plaintiff's motion to amend.

### 2.    Potential Application of Equitable Tolling

In contrast, Judge Kahn found that certain of plaintiff's allegations in the original complaint sufficiently stated Eighth Amendment violations, but as alleged, were time-barred by the applicable three year statute of limitations. (Dkt. No. 4, at 19-21, 27-28). First, Judge Kahn found that plaintiff had sufficiently met the objective and subject elements of an Eighth Amendment claim in his allegation that Upstate employees Maynard, Winston, Marinelli, P. Baker, H. Baker, and Barkman were deliberately

---

[11] The Proposed Amended Complaint includes a number of events related to plaintiff's unwilling participation in the SOCTP that occurred after the filing of the original complaint. (Pr. Am. Compl. at 208-212, 218-220). However, these more recent factual allegations appear intended to bolster his previously dismissed claim that he should not have been enrolled in the SOCTP, rather than asserting a separate cause of action.

indifferent to his mental health needs because they refused to acknowledge that he was suicidal, failed to send him for a mental health observation, provided the wrong mental health medication, supplied him with a razor despite his suicidal thoughts, and discontinued his mental health medication. (Compl. at 12-23). Similarly, plaintiff alleged that Upstate employees Scott, Maynard, Winston, Gallagher, and Fournier violated his Eighth Amendment rights in May 2014 when they confined him to a cold cell ("Cell 13") that was constantly illuminated and infested with rodents and human waste. (Compl. at 55, 59; Dkt. No. 4 at 25). As Judge Kahn explained in his Decision and Order, all of these causes of action first arose in May and June 2014. (Dkt. No. 4, at 26-28). Therefore, on the face of the complaint, those claims were time-barred, and it did not appear that the continuing violation doctrine or other equitable tolling principles would apply. (*Id.*)

In his Proposed Amended Complaint, plaintiff alleges that he filed number of grievances related to these claims throughout May 2014. (Pr. Am. Compl. at 36). Plaintiff also submitted a number of exhibits related to these grievances, including a consolidated final determination by the Central Office Review Committee ("CORC") dated October 15, 2014, that appears to reference the condition of confinement claims related to plaintiff's arrival at Upstate and his confinement in Cell 13. (Dkt. No. 28-3, at 2-3, 13). Based on that supplemental material, it appears that plaintiff has a potentially meritorious argument that the three year statute of limitations for these claims was equitably tolled until October 15, 2017. *See Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011) (equitable tolling is applicable to the time period during which an inmate is exhausting his administrative remedies). Because plaintiff's complaint was dated

September 24, 2017, such claims may be timely.

Plaintiff was transferred to Cell 15 at some point in May 2014, and shared a wall with a mentally ill inmate who was continuously banging on the cell and shouting.[12]  In his complaint, plaintiff alleged that, between May and September 2014, Eddy, Marinelli, and Gokey refused to transfer plaintiff after he complained that the noise caused sleep deprivation, hallucinations, migraine headaches, and loss of impulse control. (Compl. at 26).  Again, Judge Kahn found that plaintiff appeared to state a cause of action, but that the claims were untimely.  He granted plaintiff an opportunity to amend his complaint to raise any applicable equitable tolling arguments.

As an exhibit to his Proposed Amended Complaint, plaintiff included a copy of a grievance dated September 8, 2014, that references the repeated denials to his requests to be moved from Cell 15 due to the continuous noise coming from the neighboring inmate. (Dkt. No. 28-3, at 41).  Plaintiff also included a copy of the denial of his administrative appeal to CORC, dated October 17, 2014. (Dkt. No. 28-3, at 45).  Again, on its face, it appears that equitable tolling may apply to the previously time-barred claims related to plaintiff's confinement in Cell 15.[13]

As outlined above, plaintiff has presented colorable arguments and documentary evidence in favor of equitable tolling with regard to three claims that had previously been dismissed without prejudice.  Therefore, while I do not recommend that the

---

[12] Plaintiff alleges that this was the same inmate described in his separate claim against defendant Smith, *supra*.

[13] Plaintiff also alleges that defendant Smith ignored plaintiff's September 19, 2014 request to be moved from Cell 15 due to the noise. (Compl. at 28).  Plaintiff's equitable tolling argument would not apply to this claim, because it was not part of his September 8, 2014 grievance.

Proposed Amended Complaint be accepted for filing due to its excessive length, numerous futile claims, and extraneous details, I do recommend that, if the district court adopts my recommendation to deny plaintiff's motion to amend, that the district court also grant plaintiff leave to file a revised proposed amended complaint within thirty days of the district court's decision.

Consistent with this report-recommendation, such revised amended complaint should only include: (1) those claims that survive defendants' motion to dismiss[14], and (2) the conditions of confinement claims that have a colorable argument in favor of equitable tolling. Plaintiff is reminded that local rules require that the revised proposed amended complaint "must be a complete pleading, which will supercede the original pleading in all respects. A party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." L.R. 7.1 (a)(4). Plaintiff should also abide by the federal requirement for a "short, and plain statement of the facts," and avoid extraneous details or exhibits. With regard to the conditions of confinement claims against defendants Maynard, Winston, Marinelli, P. Baker, H. Baker, Barkman, Scott, Gallagher, Fournier, Eddy, and Gokey, this court encourages plaintiff to meet these requirements by supplementing the allegations against those defendants set forth in his original complaint (Compl. at 9-23, 26-28, 55-56) with a brief description of the applicable timeline of his relevant administrative grievances.

---

[14] If the district court adopts my report-recommendation in its entirety, the only claims surviving the motion to dismiss would be those against defendant Smith related to inmate noise and rodent infestation, and retaliation claims against defendants Bernier and LeClerc.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' partial motion to dismiss (Dkt. No. 19) be **GRANTED** with respect to all claims against defendants Waterson and Nelson, but denied with respect to the claims against defendant Smith; and it is further

**RECOMMENDED**, that plaintiff's motion to amend (Dkt. No. 28) be **DENIED**; and it is further

**RECOMMENDED**, that if the district court adopts my recommendation to deny plaintiff's motion to amend, that plaintiff be granted thirty days to submit a proposed amended complaint that includes the conditions of confinement claims against defendants Maynard, Winston, Marinelli, P. Baker, H. Baker, Barkman, Scott, Gallagher, Fournier, Eddy, and Gokey that had previously been dismissed as time-barred, and is otherwise consistent with the findings in this report-recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated:       December 12, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge