UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
EQUARN WHITE,

                              Plaintiff,

        -against-                                    9:17-CV-1094 (LEK/ATB)

JOHN MARINELLI, *et al.*,

                              Defendants.
_____


**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

        Plaintiff, a state prisoner, brings various constitutional claims stemming from his

incarceration at Upstate Correctional Facility. Dkt. No. 1 ("Complaint"). The Complaint names

twenty-two correctional officers as defendants. Id. at 1. On November 17, 2017, the Court

granted Plaintiff leave to proceed in forma pauperis, reviewed the Complaint, and dismissed

many of Plaintiff's claims. Dkt. No. 4 ("November Order"). Defendants Tracy Nelson, Randel

Smith, and George Waterson have moved to dismiss the surviving claims. Dkt. No. 19 ("Motion

to Dismiss"). While the Motion to Dismiss was pending, Plaintiff filed his Motion to Amend,

attaching a 253-page proposed Amended Complaint that seeks to revive the dismissed claims and

add numerous claims and defendants. Dkt. Nos. 28 ("Motion to Amend"), 28-2 ("Amended

Complaint"). The Honorable Andrew T. Baxter, U.S. Magistrate Judge, issued a report-

recommendation concerning both motions. Dkt. No. 34 ("Report-Recommendation"). Plaintiff

has filed objections. Dkt. No. 35 ("Objections").

        For the reasons set forth below, the Court adopts the Report-Recommendation in part and

modifies it in part. It grants the Motion to Dismiss the Eighth Amendment claim against

Waterson, but it denies the motion as to the Eighth Amendment conditions-of-confinement claim against Randel Smith and First Amendment retaliation claim against Nelson. It denies the Motion to Amend. However, Plaintiff may renew his Motion to Amend with a revised proposed amended complaint.

## II.    LEGAL STANDARD

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and it "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636. However, "where [the] parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002); see also Thomas v. Arn, 474 U.S. 140, 150 (1985) (holding that Congress did not "intend[] to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").

The Court may excuse a party's failure to object "in the interests of justice," and modify or reject the report-recommendation, if "the magistrate judge committed plain error in ruling against the defaulting party." Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000). Therefore, when no party objects to a magistrate judge's report-recommendation, courts in this circuit review it only to determine whether the magistrate

judge made a clear error. <u>Boice v. M+W U.S., Inc.</u>, 130 F. Supp. 3d 677, 684 (N.D.N.Y. 2015); <u>see also</u> Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

## III. PROCEDURAL HISTORY

### A. Initial Review

On November 17, 2017, the Court held that the following claims survived its initial sua sponte review conducted pursuant to 28 U.S.C. § 1915:

(1)    An Eighth Amendment medical indifference claim against Nurse George Waterson for failing to treat an infected rodent bite;

(2)    An Eighth Amendment conditions-of-confinement claim against Sergeant Randel Smith for placing Plaintiff in Cell 18 next to an inmate "Reeder" who kicked and banged on Plaintiff's cell, depriving him of sleep, in December 2015; and

(3)    A First Amendment claim alleging that Offender Rehabilitation Counselors Denise Bernier, Tracy Nelson, and Roxanne LeClerc retaliated against Plaintiff by withholding copies of video footage he had requested to support a grievance and referring him to the sex offender program.

The Court also found that the following claims were plausible, but were time-barred because they accrued before September 24, 2014; however, it allowed Plaintiff an opportunity to amend if he could identify a reason the Court should toll the statute of limitations:

(4)    Eighth Amendment deliberate medical indifference claims against Sergeants Luc Maynard and Patrick Baker, Officer Richard Winston, mental health worker John Marinelli, Nurse Heath Baker, and Lieutenant Robert Barkman, based on Plaintiff's mental health needs in Spring 2014; and

(5)    Eighth Amendment conditions of confinement claims against: (a) Maynard, Winston, Officer Adam Gallagher, Officer Brian Fournier, and Sergeant Richard Scott based on unsanitary conditions in Cell 13 May 2014; and

(b) Sergeants Michael Eddy and Laura Gokey, Marinelli, and Randel Smith for keeping Plaintiff in Cell 15 next to Reeder (the loud neighbor), resulting in sleep deprivation, in May 2014.

Finally, the Court dismissed the following claims for failure to plausibly allege a constitutional violation:

(6)     A Fourteenth Amendment deprivation of property claim against Scott and Bernier;

(7)     Eighth Amendment medical indifference claims against: (a) Heath Baker, for failing to treat a rash, foot fungus, and shingles; (b) Nurse Michele Byno, for discontinuing Plaintiff's mental health medication in October 2014; and (c) Nurse Christy Conklin, for failing to treat an infected rodent bite;

(8)     Eighth Amendment conditions of confinement claims against: (a) Fournier and Officer Michael Bashaw for not allowing Plaintiff to attend dinner on May 6, 2014; and (b) Fournier, Officer Jeffry Premo, Officer Nicholas Ashline, and Randel Smith for barring him from the barber shop and commissary;

(9)     An Eighth Amendment claim against Nelson for verbal sexual harassment;

(10)    Fourteenth Amendment due process claims against: (a) Bernier and LeClerc for placing Plaintiff in a sex offender program; and (b) Eddy related to Plaintiff's security status;

(11)    Fourteenth Amendment equal protection claims against Bernier and LeClere for placing him in the sex offender program;

(12)    Fourteenth Amendment due process claims against Bernier and Nelson for failing to respond to Plaintiff's FOIL requests;

(13)    First Amendment claims alleging that Scott, Heath Baker, Nurse Administrator Nancy Smith, Fournier, Bashaw, Randel Smith, Premo, Ashline, and Laura Gokey retaliated against Plaintiff for filing grievances;

(14)    A First Amendment access-to-court claim against Bernier;

(15)    Conspiracy claims against Heath Baker and Marinelli; and

(16)    Related claims against two supervisory officers: (a) Nancy Smith, for failing to remedy the violations regarding Plaintiff's medical needs; and

   (b) Superintendent Donald Uhler, for failing to transfer Plaintiff from his noisy
   cell.

Nov. Order at 14–43.

### B. Motions to Dismiss and Amend

  Bernier and LeClerc answered the Complaint. Dkt. No. 22 ("Answer"). Waterson, Randel

Smith, and Nelson moved to dismiss the three surviving claims against them. Mot. to Dismiss.

They argued that the Eighth Amendment allegations against Smith and Waterson, and the First

Amendment allegations against Nelson, fail to state claims. Id. at 2, 6–17. Plaintiff then filed his

Motion to Amend. Bernier, LeClerc, Nelson, Randel Smith, and Waterson opposed that motion.

Dkt. No. 32 ("Opp'n to Mot. to Amend"). The other defendants named in the original and

proposed amended complaints have not been served process. Id. at 4.

### C. Report-Recommendation

  On December 12, 2018, Judge Baxter issued the Report-Recommendation. In it, he

recommends that this Court deny the Motion to Dismiss and allow discovery concerning the

Eighth Amendment conditions-of-confinement claim against Randel Smith. R. &. R at 1.

However, he concludes that the Court should dismiss the other two surviving claims: the Eighth

Amendment medical indifference claim against Waterson and the First Amendment retaliation

claim against Nelson. Id. Judge Baxter also recommends that the Court deny Plaintiff's Motion

to Amend because the 253-page proposed Amended Complaint is not appropriately "short and

plain." Fed. R. Civ. P. 8(a)(2). In support, he finds that "most of plaintiff's proposed amendments

are futile because they fail to correct the defects identified in the [November Order]." R. &. R. at

19. However, he suggests granting Plaintiff leave to file a revised proposed amended complaint

to add *only* his revised conditions-of-confinement claims against Maynard, Winston, Marinelli, Patrick Baker, Heath Baker, Barkman, Scott, Gallagher, Fournier, Eddy, and Laura Gokey, which the Court had previously dismissed as untimely. Id. at 2. He concluded that "[i]n his Proposed Amended Complaint, Plaintiff has provided documentation that he had timely initiated the administrative grievance process with respect to those claims, and that he had not received final determinations on those grievances until at least October 2014. Therefore, Plaintiff has presented a colorable argument in favor of equitable tolling with respect to those claims." Id.

Accordingly, the Magistrate Judge concludes that "the revised amended complaint should only include: (1) those claims that survive Defendants' motion to dismiss," meaning (a) the Eighth Amendment claims against Randel Smith "related to inmate noise and rodent infestation, and [(b)] retaliation claims against defendants Bernier and LeClerc," and "(2) the [May and June 2014] conditions of confinement claims that have a colorable argument in favor of equitable tolling." Id. at 23 n.14; see also id. at 20–23 (describing conditions of confinement claims).

## IV.    DISCUSSION

Since Defendants have not objected to the Report-Recommendation, the Court reviewed the Magistrate Judge's decisions in favor of Plaintiff for clear error. It has found none. Thus, Plaintiff's Eighth Amendment conditions-of-confinement claim against Randel Smith survives, and Plaintiff may amend his complaint to add his conditions-of-confinement claim against Maynard, Winston, Marinelli, the Bakers, Barkman, Scott, Gallagher, Fournier, Eddy, and Gokey within thirty days.

At issue are Plaintiff's objections, filed on January 2, 2019. Obj. He attacks the Report-Recommendation on two fronts. First, he argues that the Eighth Amendment medical

indifference claim against Waterson and the First Amendment retaliation claim against Nelson each state a claim and should not be dismissed. Second, he argues that the Motion to Amend should be granted. He asserts that the claims raised in his proposed Amended Complaint are plausible, not futile. The Court will address each set of objections in turn.

As explained below, the Court agrees with the Magistrate Judge that the Complaint fails to state a claim against Waterson, but finds that it does state a valid retaliation claim against Nelson. Furthermore, the Court adopts Judge Baxter's recommendation to deny Plaintiff's Motion to Amend. It agrees that the proposed Amended Complaint fails to revive some claims that were dismissed in the November 2017 Order. However, the Court finds that several of Plaintiff's claims in the proposed Amended Complaint are plausible. Accordingly, it will allow Plaintiff to file an Amended Complaint with respect to those claims.

### A. Motion to Dismiss

Rule 12(b)(6) requires a complaint to be dismissed if it "fail[s] to state a claim on which relief may be granted." To state a valid claim, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 8(a)(2). The Court may disregard "legal conclusions couched as factual allegations" that are "devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, a court must take the "well-pleaded factual allegations" as true, id. at 679, and "draw[] all reasonable inferences in the plaintiff's favor," Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). To "'nudge[] [the plaintiff's] claims across the line from conceivable to plausible,'" the facts need only "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those

facts is improbable.'" Citizens United v. Schneiderman, 882 F.3d 374, 380 (2d Cir. 2018) (quoting Twombly, 550 U.S. at 556–57, 570). Where, as here, a plaintiff is litigating pro se, the Court must construe his or her pleadings "liberally and interpret[] them to raise the strongest arguments that they suggest." Sykes v. Bank of Am., 723 F. 3d 399, 403 (2d Cir. 2013).

When deciding a motion to dismiss under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). It may also consider "documents or information contained in [the] defendant's motion papers if the plaintiff has knowledge or possession of the material and relied on it in framing the complaint," as well as "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Envtl. Servs. v. Recycle Green Servs., 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (quoting In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003)).

The facts alleged in the Complaint and Amended Complaint were recited in the November Order and Report-Recommendation, and they are elaborated as necessary below. To decide the Motions to Dismiss and Amend, the Court will take them as true and draw all permissible inferences in Plaintiff's favor. Harris, 572 F.3d at 71.

1.    *Eighth Amendment Medical Indifference Claim* Against *Waterson*

The Magistrate Judge correctly found that the facts alleged in both the Complaint and Amended Complaint failed to state an Eighth Amendment medical mistreatment claim agaisnt Waterson. On April 16, 2016, a mouse bit Plaintiff on the toe. Am. Compl. at 109–110, ¶ 164.[1]

_____

[1] Because the Court is also addressing the Motion to Amend in this Memorandum-Decision and Order, for efficiency, it cites to the facts in the proposed Amended Complaint. With

8

Waterson, a staff nurse, came to Plaintiff's cell and viewed the "bite mark as it was bleeding." Id. He told Plaintiff he would get a bandage, but did not return that day. Id. On April 17, another nurse, Heath Baker, treated the bite with povidone-iodine, an antiseptic. Id. ¶ 166. The next day, April 18, Defendant Waterson returned, "s[aw] that Plaintiff['s] foot was infected, but refused to treat Plaintiff." Id. Plaintiff gave him a sick call slip—a request to see a doctor—but Waterson destroyed it. Id. ¶¶ 166–67. In his original Complaint, Plaintiff alleged that the next morning, April 19, he experienced "severe stomach pain," and his skin was "turning yellow and green" around the bite mark. Compl. at 47, ¶ 123. That afternoon, he began "coughing up blood and whispered that he need[ed an] emergency sick call." Am. Compl. at 111, ¶ 168. "[F]ive minutes later, nurse [Christy] Conklin came to Plaintiff's cell. And 30 minutes later, [she] came back" and treated him with pain medication for head and stomach pain, hydrogen peroxide antiseptic, and bacitracin ointment for the bite. Id.

An Eighth Amendment claim has "subjective" and "objective" components. Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). The subjective component requires that the defendant have acted with a culpable state of mind: "deliberate indifference" to the plaintiff's health. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The standard equates to criminal recklessness; the prison official must "consciously disregard a substantial risk of serious harm." Id. at 839. Plaintiff asserts that Waterson acted with such deliberate indifference because he ignored then intercepted Plaintiff's requests for medical staff to treat the bite. Obj. at 4. The Court assumes, without deciding, that these allegations are sufficient to satisfy the subjective element.

respect to the Eighth Amendment claim against Waterson, the facts in the Amended Complaint mirror the allegations in Plaintiff's original Complaint unless otherwise noted.

However, Plaintiff must also make an objective showing that he (1) was "actually deprived of adequate medical care," meaning that prison officials "fail[ed] to take reasonable measures in response to [his] medical condition;" and (2) that "the inadequacy in medical care is sufficiently serious" in view of the "harm, if any, the inadequacy has caused or will likely cause" Plaintiff. Salahuddin, 467 F.3d at 279. He must have had a "condition of urgency, one that may produce death, degeneration or extreme pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Whether a condition is sufficiently serious depends on "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id.

Even if Waterson had a culpable mindset, Plaintiff fails to satisfy the objective element—because even if Waterson sought to withhold "adequate medical care" from Plaintiff, he failed. Salahuddin, 467 F.3d at 279. Nurses Baker and Conklin "took reasonable measures in response" to Plaintiff's bite and infection when they treated his toe with antiseptic and pain medication. Id.; Am. Compl. ¶ 168. Plaintiff's wound was not even infected when Baker sterilized it on April 17, and he does not allege that nurse Conklin's April 19 treatment failed to resolve the infection or other symptoms. Therefore, there is nothing to suggest that Plaintiff was deprived of "reasonably necessary care." Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir. 1989). That he requested a tetanus shot does not change the analysis. Nov. Order at 23–24; see also Chance, 143 F.3d at 703 ("So long as the treatment is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Therefore, at most, Plaintiff can allege that Waterson (by ignoring Plaintiff's request for a bandage on April 16, after the bite, and by destroying his sick call slip on April 18, when the infection developed) delayed Baker and Conklin's otherwise reasonable treatments by one day each. "When a prisoner alleges 'a temporary delay or interruption in the provision of otherwise adequate medical treatment,'" the Court must "focus on the seriousness of the particular risk of harm that resulted from 'the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" Bellotto v. Cty. of Orange, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting Smith v. Carpenter, 316 F.3d 178, 184–86 (2d Cir. 2003)). A delay in providing necessary medical care only violates the Eighth Amendment if it exposes the inmate to "the unnecessary and wanton infliction of pain," or an "unreasonable risk" that he will suffer similarly "serious harm" in the future. Smith, 316 F.3d at 186–87. The Second Circuit "has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, see Archer v. Dutcher, 733 F.2d 14, 16 (2d Cir. 1984)[where delay also caused "extreme pain" and miscarriage], ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years.'" Demata v. N.Y. State Corr. Dep't of Health Servs., 198 F.3d 233 (2d Cir. 1999) (citations omitted). In short, the facts must demonstrate that the delay "exposed the inmate to undue suffering" before he was treated, "or the threat of tangible residual injury" afterward. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

Plaintiff does not provide facts suggesting that the one-day delays in treating his bite and subsequent infection exposed him to extreme pain or threatened his future health. Even though Waterson may have "deliberately delayed" the treatments, Plaintiff was not in pain at least until

the morning of April 19, and Conklin treated that pain within a few hours. Am. Compl. at 111,

¶ 168. Given the short time period, the pain was not "chronic," and Plaintiff does not suggest that

it interfered with his daily activities. Chance, 143 F.3d at 702. In addition, the facts do not

indicate that the infection was "life-threatening," "fast-degenerating," or otherwise risked further

deterioration; it quickly resolved after Conklin applied another antiseptic, some pain medication,

and ointment. Am. Compl. ¶ 168. With any allegations of more severe injuries or lasting

complications, Plaintiff's statement that his toe infection and stomach ache caused him "extreme

pain" for a few hours does not plausibly demonstrate that he endured  "cruel and unusual

punishment" of a constitutional dimension. See Frith v. City of New York, 203 F. Supp. 3d 386,

389–90 (S.D.N.Y. 2016) (one-day delay in treating infected mouth abscess that allegedly caused

"extreme pain" did not state a claim because plaintiff did not provide enough facts to show "that

the delay itself caused or exacerbated the infection, caused him extreme pain, or caused any

permanent harm").[2]

     Therefore, even if Plaintiff's Amended Complaint establishes that Waterson deliberately

ignored Plaintiff's infected mouse-bite, its allegations demonstrate that other professionals gave

Plaintiff all the medical care that was "reasonably necessary" to treat his condition and did so

---

[2] Compare Gomez v. Cty. of Westchester, 649 F. App'x 93, 96 (2d Cir. 2016) (one-day delay in providing pain medication for "extreme tooth pain" did not support Eighth Amendment claim) and Bilal v. New York State Dep't of Corr., No. 09-CV-8433, 2010 WL 2506988, at *11 (S.D.N.Y. June 21, 2010), aff'd, 494 F. App'x 143 (2d Cir. 2012) (dismissing claim based on allegations that plaintiff suffered "extreme" back and head pain for a "few hours" without pain medication, where the delay did not worsen his condition); with Chance, 143 F.3d at 702–03 (six-month delay in treatment for dental condition that developed into infection and extreme pain stated claim) and Archer, 733 F.2d at 16 (holding that beating that caused the pregnant plaintiff "vaginal bleeding" and "cramps" causing "extreme pain" during twelve-day delay in treatment, precipitating a miscarriage, stated claim).

before it became sufficiently serious. Langley, 888 F.2d at 254. As a result, Plaintiff's Eighth Amendment medical mistreatment claim against Waterson must be dismissed. Salahuddin, 467 F.3d at 279.

> ## 2. *First Amendment Retaliation Claim Against Tracy Nelson*

Plaintiff also objects to the Magistrate Judge's recommendation to dismiss Plaintiff's retaliation claim against Nelson, a Supervising Offender Rehabilitation Coordinator ("SORC").

To prove a retaliation claim under § 1983, a prisoner must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir.2004). "It is well established that the filing of a prison grievance is a constitutionally protected activity." Burton v. Lynch, 664 F. Supp. 2d 349, 366 (S.D.N.Y. 2009) (citing Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996)). An "adverse action" is one that "would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights" (by filing a grievance, for example). Gill, 389 F.3d at 381. A "causal connection" is one in which the protected conduct was "a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir.2003). Because "prisoner retaliation claims are easily fabricated, and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," id., the Second Circuit has "insisted on a higher level of detail in pleading" prisoners' retaliation claims, Gill, 824 F.2d at 194, and instructed courts to "examine [them] with skepticism and particular care," Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995). Thus, Plaintiff must supply "specific and detailed factual allegations" suggesting that Defendants retaliated against him for

filing grievances, and may not rely on "wholly conclusory" statements to support such claims.

Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015).

Plaintiff alleges that on March 28, 2016, he filed a grievance against Nelson and Bernier for ignoring Plaintiff's Freedom of Information Law ("FOIL") requests for video footage that supported his grievances against Bernier, LeClerc, and others,[3] and for charging an exorbitant price for the footage ($96.00 instead of the appropriate $0.60 cents). Compl. at 44, ¶ 115; see also id. at 38–45. Nelson showed up at Plaintiff's cell on April 21, 2016 and had a protracted conversation with him. Id. at 50–52, ¶¶ 127-32. Plaintiff states that this was highly unusual; in his four years, six months in state custody, a SORC had never visited or spoken to him. Id. at 52, ¶ 131. Nelson was holding a copy of his March 2016 grievance. Id. at 52, ¶ 132. She "tried to get [him] to apologize about calling her Denise Bernier['s] flunky," and for his accusation that she was involved in "corruption." Id. Plaintiff also alleges that she asked him to expose his penis. Id. at 52, ¶ 131. When Plaintiff refused, Nelson threatened that she had "been working for DOCCS for 15 years" and knew that "all [she] had to do [was] tell the C.O." that Plaintiff exposed himself and he would be disciplined. Id. Approximately fifteen months later, in August 2017, a New York court ordered Nelson to grant Plaintiff's FOIL request and produce the video footage. Compl. at 62–63, ¶ 164(D). Instead of complying, Nelson destroyed "3 different DVDs and multiple documents" related to Plaintiff's request. Obj. at 9; Compl. at 44, ¶¶108, 113–14. And

---

[3] Nelson allegedly destroyed footage of LeClerc "telling Plaintiff that [his] sex offense referral was for grievances and complaints," "of a nurse telling Plaintiff that a doctor at Greenhaven [Correctional Facility] knew about an infection but failed to treat Plaintiff," Compl. at ¶ 164(D), and of the mouse biting Plaintiff and his subsequent conversation with nurses, id. at 47–48, ¶ 124. Bernier allegedly withheld footage of a conversation between Plaintiff and a hearing officer, Gutwine, during Plaintiff's December 2015 disciplinary hearing. Id. at 33, ¶ 91.

Nelson continued to insist that Plaintiff pay the excessive $96.00 to process his F.O.I.L. request. Id.

The Magistrate Judge found that the Complaint lacks facts showing that Plaintiff's March 2016 grievance prompted Nelson to charge the exorbitant fee and destroy the video footage. R. & R. at 15. Indeed, Plaintiff concedes in the Complaint that Nelson had already decided to charge Plaintiff $96.000 before Plaintiff filed the March 2016 grievance and, therefore, does not plausibly suggest that the overcharging was retaliatory. Compl. at 38–40, 44, ¶¶ 103, 106–08, 114. However, at least two alleged facts plausibly suggest that Nelson acted with a retaliatory animus in destroying the tapes: first, her April 16, 2016 visit to Plaintiff's cell—in which she rebuked Plaintiff for filing the grievance and tried to coax him expose himself so that she could file disciplinary charges. Baskerville v. Blot, 224 F. Supp. 2d 723, 733 (S.D.N.Y. 2002) (defendants' statements chiding plaintiff for filing grievances, and administrative finding that plaintiff's discipline was unjustified, sufficed to allege that discipline was retaliatory, even though plaintiff did not allege grievances were filed recently). Second, destroying the tapes violated the state court's order. Obj. at 9; Compl. at 38–44, 52, ¶¶108, 112–114, 131. Such improper conduct evinces improper motives. See Shakur, 391 F.3d at 116 ("[F]ailure to abide by established procedures or standards can evince an improper objective" or "personal prejudice.").

Indeed, there is no obvious reason other than retaliation why Nelson would have destroyed the video footage Plaintiff requested. The fact that a year passed before she did so does not prove otherwise; until the state court ordered Nelson to produce the footage in 2017, she could simply withhold it from Plaintiff; there was no reason to destroy it. Obj. at 9; see also Espinal, 558 F.3d (finding passage of time less of an obstacle where there was a plausible reason

officers would have waited so long to retaliate); cf. Clark, 532 U.S. at 274 ("Action taken (as here) 20 months later suggests, *by itself*, no causality at all").

**B. Motion to Amend**

"Leave to file an amended complaint 'shall be freely given when justice so requires,' and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (quoting Fed. R. Civ. P. 15 and citing Foman v. Davis, 371 U.S. 178, 182 (1962)). To determine if an amendment would "prejudice" the opposing party, courts must consider whether its allowance would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). An amendment is "futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim." Id. at 110.

A proposed amended complaint may also be subject to dismissal (and therefore futile) if it is not "short and plain." Fed. R. Civ. P. 8(a)(2). As the Second Circuit has written:

> Rule 8 [of the Federal Rules of Civil Procedure] provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The [complaint's] statement [of the plaintiff's claim] should be plain because the principal function of pleadings under the Federal Rules is to give the [defendants] fair notice of the claim asserted so as to enable [them] to answer and prepare for trial. The statement should be short because "[u]nnecessary prolixity [meaning too much unneeded detail] in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."
>
> When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, Fed. R. Civ. P. 12(f), or to

> dismiss the complaint. Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised. When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8.

Salahuddin v. Cuomo, 861 F.2d 40, 41–42 (2d Cir. 1988) (concluding that the district court was within its discretion to dismiss a 15-page, single-spaced complaint that was not "vague or incomprehensible," but contained too much detail; granting leave to amend); see also Jones v. Nat'l Commc'ns & Surveillance Networks, 266 F. App'x 31, 33 (2d Cir. 2008) ("[T]he district court's determination, that [plaintiff's] single-spaced 58–page complaint with 87 additional pages of attachments, alleging over twenty separate causes of action against more than 40 defendants, violated the short and plain statement requirement of Rule 8, was not an abuse of discretion.").

### 1. Excessive Length

Plaintiff's proposed Amended Complaint comprises 308 paragraphs, divided into numerous subparagraphs, and spans 253 pages. Large portions of it are devoted to legal argument. Accordingly, it is neither "short" nor "plain," as Rule 8(a)(2) requires. In addition, the Magistrate Judge was correct to conclude that it fails to allege information adequate to revive many of the claims dismissed in the November Order. Requiring defendants to answer such a lengthy complaint, with so much extraneous material, would waste their time and stall this case unnecessarily. The Court could comb through the proposed amended complaint to identify and strike the irrelevant and non-factual material. But doing so "would [waste] resources upon which other litigants have an equal call." VTech Holdings Ltd. v. PriceWaterhouseCoopers, LLP, No. 03-CV-1419, 2003 WL 21756623, at *2 (S.D.N.Y. July 30, 2003). In sum, allowing the Motion

to Amend would prejudice Defendants, delay this case, and strain judicial time and resources—which alone justifies denying it. Block, 988 F.2d at 350.

That said, the Court agrees with Plaintiff that many of the allegations in his proposed Amended Complaint provide enough detail to correct defects in certain claims that were dismissed in the November Order. Obj. at 11–12. Therefore, the Court will allow Plaintiff to file a proposed Amended Complaint that includes only the facts relevant to the claims that survive this Memorandum-Decision and Order, which the Court will list below.[4] The revised amended complaint should not include claims that this Court has previously dismissed or deems futile in this opinion. Since Plaintiff has had two opportunities to plead those claims and has described the underlying events in significant detail, and since this case has stalled in the pleading stage for over a year and consumed significant judicial time and resources in the interim, the Court dismisses those claims without leave to re-plead. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 72 (2d Cir. 1996) (stating that a court may "dismiss a [claim] without leave to replead when a party has been given ample prior opportunity to allege [the] claim").[5]

The Court will first address the claims in the proposed Amended Complaint that are viable; then, it will address the claims that are futile.

---

[4] Any legal argument should be limited to indicating which legal claims his factual allegations are intended to support. Plaintiff will have the opportunity to submit a more detailed legal analysis, with citations to caselaw, if Defendants file another motion to dismiss or for judgment in their favor.

[5] The Court will not set a page limit for the amended complaint, but advises Plaintiff that it does not appear that his surviving claims should require him to use more than the approximately seventy pages he used in his original Complaint.

*Assault Claims against Michael Gokey, Sarah Tomkins, and John Does*

First, Plaintiff alleges that on September 2, 2014, he was "sexually assaulted by staff" including Michael Gokey and unidentified officers at Green Haven. Am. Compl. at 52, ¶ 101(F)(1). He states that he was "punched in the testicles, and staff . . . rammed their fingers in [Plaintiff's] anus," causing swelling and other injuries. Id. He also alleges that at least eight times from March 24 to September 8, 2015, Officer Sarah Tompkins would "pull Plaintiff to the side" in the "library and make inappropriate comments." Am. Compl. at 63, ¶ 109. Among other things, she said that her "home girl," referring to Tracy Smith, "said your sexy ass is scared of pussy." Am. Compl. at 63, ¶ 109. After Plaintiff filed a grievance against Smith for sexual harassment, Tompkins chided him about it, saying, "you['re] not stupid enough to file a grievance against me." Id. ¶ 115. Plaintiff then describes how, on September 22, 2016, Tompkins conspired with four other officers to assault Plaintiff in a vacant classroom near the prison library. Id. ¶¶ 118–19. The officers then falsely charged Plaintiff with "lewd conduct" and assaulting staff. Id. ¶¶ 119–21.

### i. *Eighth Amendment Claim*s *Against Gokey, Tomkins, and Does*

Prison guards may not use force in such a way—"maliciously and sadistically to cause harm"—even if they cause only minor injuries (or, for that matter, no injuries). Griffin v. Crippen, 193 F.3d 89, 92 (2d Cir. 1999). Such physical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment. Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015) ("A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment.");

Edwards v. McGrain, No. 09-CV-582, 2012 WL 6701826, at *5 (W.D.N.Y. Dec. 26, 2012) (Eighth Amendment claim based on beating by correctional officers in retaliation for grievance overcame summary judgment despite only minor injuries). Accordingly, Plaintiff states a valid Eighth Amendment excessive force claim against Gokey, Tompkins, and the John Doe officers who acted in concert with them.[6]

### ii. First Amendment Retaliation Claims Against Tompkins

Given the facts suggesting that Tracey Smith was friends with Tompkins and told her about her sexual harassment of Plaintiff and his grievance about it, it is also plausible that Tompkins instigated the September 22, 2016 beating in retaliation for that grievance. See Am. Compl. at 63–64, ¶¶ 109, 115. Therefore, Plaintiff also states a First Amendment retaliation claim against Tompkins—both for the beating and the false disciplinary charges (for lewd conduct and assault) designed to fabricate a justification for it. Ford v. Martuscello, No. 14-CV-1566, 2016 WL 5322166, at *5 (N.D.N.Y. June 23, 2016), adopted, 2016 WL 5256901 (N.D.N.Y. Sept. 22, 2016) (inmate stated claim that defendants, in beating inmate, retaliated for complaints against other officers where facts suggested the officers were aware of his grievances against their friends and assaulted plaintiff within one to four months of their filing); Gill, 389 F.3d at 384 (holding that filing a false misbehavior report was an adverse action for purposes of retaliation analysis).

---

[6] Although the claims regarding Gokey accrued two weeks before the September 24, 2014 time-bar, Plaintiff's September 8, 2014 grievance may have tolled the limitations period. R. & R. at 21 (citing Gonzales v. Hasty, 651 F.3d 318, 324 (2d Cir. 2011)).

3.        *First Amendment Retaliation Claim Against Laura Gokey and Randel Smith*

In his original Complaint, Plaintiff also alleged that Sergeants Laura Gokey and Randel Smith retaliated against him by keeping him in a cell neighboring inmate Reeder, who loudly "banged and kicked" Plaintiff's cell door so incessantly that Plaintiff "was only able to sleep two to three hours a day and began to hallucinate, developed migraines, and lost his impulse control." Nov. Order at 27. "Plaintiff claim[ed] that he was placed in a cell adjacent to [Reeder] on two occasions: first, during his initial confinement at Upstate in Cell 15 from May 2014 until [September] 2014 and, second, in Cell 18 from December 29, 2015 until April 25, 2016." Id. at 40. Plaintiff repeats the same allegations in his proposed Amended Complaint. Am. Compl. at 51–59, ¶ 101. The Court previously upheld Plaintiff's Eighth Amendment claim based on these allegations, but dismissed his related retaliation claim because Plaintiff failed to describe any particular grievance that precipitated his cell placements. Nov. Order at 27, 35–36; R. & R. at 9–11, 26.

However, additional facts in the Amended Complaint describe just such a grievance and plausibly allege a causal connection to Gokey and Smith's actions. Plaintiff now asserts that on September 8, 2014, he filed a grievance regarding the September 2, 2014 sexual assault by staff. Am. Compl. at 52, ¶ 101(F)(1). "A couple of inmates told Plaintiff that one of the officers was [Laura] Gokey's husband Michael Gokey, who's known for assaulting inmates." Id. ¶101(F)(2). Laura Gokey plausibly knew about the grievance because it was against her husband, and on September 10, 2014, she took Plaintiff from his cell for another guard to photograph his injuries and questioned him about the assault. Id. During the questioning, she told him that he "should let it go." Id. Later, when Plaintiff asked why other inmates around him were being transferred to

different cells when he was not, even though Reeder was "depriving him of sleep," Gokey "whispered, 'because they don't write grievances.'" Id. ¶ 101(F)(3).

On September 19, 2014, Plaintiff received a letter stating that he should have been moved to a different floor, and that Randel Smith, Laura Gokey, and another officer (Eddy) knew why he had not yet been moved. Id. ¶ 101(M). When Plaintiff asked Smith why, he lied that there was "no [other] cell open." Id. Smith also allegedly misrepresented to the IGRC that he interviewed Plaintiff about his September 8, 2014 grievance against Smith and Gokey concerning Reeder. Am. Compl. at 55–56, ¶ 101(L), (M), (N)(2); Dkt. Nos. 28-3 at 40–41 (Exhibit S"), 28-3 at 42–43 ("Exhibit T"). The Inmate Grievance Review Committee ("IGRC") dismissed the grievance because Smith stated that Plaintiff could not "substantiate" it. Id. On December 29, 2015, when Plaintiff was transferred back to Upstate, Smith interviewed him and returned him to the cell neighboring Reeder over Plaintiff's protest. Id. at 58, ¶ 101(N)(7).

The proposed allegations, taken as true, suggest that Gokey and Smith had retaliatory motives and influenced the decision to keep Plaintiff in the cell next to Reeder. According to the Amended Complaint, Gokey: (1) was married to subject of Plaintiff's grievance and therefore, had a reason to retaliate; (2) warned Plaintiff to withdraw the grievance; (3) had the power to prevent Plaintiff's transfer; and (4) suggested that Plaintiff was being kept in Cell 15 next to Reeder because of his grievances. And Smith: (1) must have known about Plaintiff's 2014 grievance regarding Reeder, given that he told the IGRC he had interviewed Plaintiff about it; (2) was willing to lie to Plaintiff and the IGRC to keep Plaintiff in the cell; and (3) another officer suggested that Smith knew the reasons Plaintiff was not being moved despite protocol indicating that he should have been. Finally, Plaintiff alleges that it was a common practice at Upstate to

place inmates who filed grievances next to Reeder as punishment. Am. Compl. at 60, ¶ 104; Dkt. No. 28-3 at 63 ("Exhibit EE"). These facts make it plausible that Gokey and Smith refused to move Plaintiff in late 2014, and that Smith returned him to the same cell when he returned to Upstate, in retaliation for Plaintiff's grievances against them.

Although Smith and Gokey's 2014 actions were outside the applicable limitation period (that is, before September 24, 2014), the Magistrate Judge concluded that equitable tolling may apply to the claims based on those actions, a conclusion to which Defendants did not object. R. &. R. at 22. Thus, the allegations against both Gokey (in 2014) and Smith (in 2014 and 2015) regarding Reeder and Plaintiff's resulting sleep deprivation state a claim for First Amendment retaliation.

4.    *Due Process Claim against Eric Gutwine*

In December 2015, Officer Gutwine held a disciplinary hearing concerning Tompkins' and her cohorts' allegedly false charges that Plaintiff engaged in "lewd conduct" and assaulted staff members in the classroom near the prison library. Am. Compl. at 68–69, ¶¶ 120–21. Gutwine found Plaintiff guilty and sentenced him to 270 days of confinement in the Special Housing Unit ("SHU") and "loss of privileges." Id. at 83, ¶ 124(C). The finding caused Plaintiff's subsequent transfer back to Upstate on December 24, 2015 (where Randel Smith allegedly placed him next to inmate Reeder) and was used as the basis for referring Plaintiff to the Sex Offender Counseling and Treatment Program ("SOCTP"). Id. at 83–84, ¶ 127; Obj. at 15. Plaintiff alleges that he was denied due process at the hearing. These allegations may state a claim under the Fourteenth Amendment, and the Court cannot conclude they are futile.

To establish that prison officials violated the Due Process Clause, Plaintiff must show that they deprived him of a liberty interest without adequate procedural protections. Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004). "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). "[W]hether the conditions of a segregation amount to an 'atypical and significant hardship' turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." Arce v. Walker, 139 F.3d 329, 336 (2d Cir. 1998).

In the Complaint, Plaintiff focused on his referral to SOCTP as the relevant liberty deprivation underlying his due process claim. Compl. at 61–64. The Court previously concluded that such "sex offender classification and programming do not trigger due process rights" in prison. Nov. Order at 30–31 (citing Blake v. Fischer, No. 09-CV-266, 2010 WL 2522198, at *10 (N.D.N.Y. Mar. 5, 2010), adopted, 2010 WL 2521978 (N.D.N.Y. June 15, 2010)). In his Amended Complaint and Objection, however, Plaintiff clarifies that he was also confined in the SHU for 290 days. Obj. at 15; Am. Compl. at 83, ¶ 124(C). "Where the plaintiff was confined [in SHU] for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required [to determine whether a prisoner's liberty interest was infringed]." Palmer, 364 F.3d at 64–65. "In the absence of a detailed factual record," the Second Circuit has "affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the Sandin plaintiff spent in SHU—and there was no indication that the

plaintiff endured unusual SHU conditions." Id. at 65–66. In this case, Plaintiff's allegation that

he was held in the SHU for 270 days, especially coupled with the sleep-depriving conditions he

allegedly experienced there, implicate a liberty interest. See Colon v. Howard, 215 F.3d 227, 232

(2d Cir. 2000) (holding after a trial that confinement in SHU for 305 days implicated a liberty

interest); Thomas v. Calero, 824 F. Supp. 2d 488, 500 (S.D.N.Y. 2011) (denying motion to

dismiss because 291 days in SHU implicated liberty interest).

Nonetheless, to state a claim for a violation of due process, Plaintiff must also allege facts

showing that the hearing lacked "that minimal process guaranteed by the Constitution" to assure

basic fairness in the correctional context. Shakur v. Selsky, 391 F.3d 106, 119 (2d Cir. 2004); see

also Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (listing constitutional requirements). Many of

the alleged defects in Plaintiff's hearing were not so fundamental as to deny him the process due

under the Constitution.

First, Gutwine delayed the hearing six times, from October 5 to December 9, 2015. Am.

Compl. ¶¶ 122(A), (B)(11). New York regulations provide that when an inmate is in segregated

confinement pending his disciplinary hearing, the hearing must commence within seven days

unless the "commissioner or his designee" authorizes the delays. 7 N.Y.C.R.R. 251-5.1.

However, violations of New York regulations governing disciplinary hearings do not always

violate the stricter, minimum standards imposed by the Fourteenth Amendment. Shakur, 391

F.3d at 119. Here, the delay did not violate the regulation because the hearing officer granted

requests for extensions of time. Am. Compl. ¶¶ 122(A), (B)(11). In any event, the delay only

resulted in Plaintiff's pre-hearing confinement in the SHU for approximately 65 days—a duration

which, in normal SHU conditions, does not implicate a liberty interest (or, therefore, any

constitutional right to process) under normal SHU conditions. See Tafari v. McCarthy, 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that sixty and ninety-day SHU confinements "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions'" (quoting Palmer, 364 F.3d at 65)).

Second, Plaintiff asserts that an off-the-record conversation shows that Gutwine "predetermin[ed] Plaintiff's guilt." Am. Compl. at 81, ¶ 124. Gutwine allegedly advised Plaintiff he was "digging [him]self in a deeper hole" because he had "contradicted [him]self" several times, and asked Plaintiff why he believed the corrections officers would lie, among other things. Id. ¶ 124(A). But "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996). Gutwine's skepticism would have been a rational response to perceived contradictions within Plaintiff's testimony. Even if Gutwine was mistaken, and Plaintiff's testimony was consistent, such a misunderstanding does not suggest that Gutwine prejudged any evidence he had not yet seen. Sawyer v. Prack, No. 14-CV-1198, 2016 WL 5440596, at *11 (N.D.N.Y. July 29, 2016), adopted, 2016 WL 5415790 (N.D.N.Y. Sept. 28, 2016). Accordingly, Plaintiff has not stated a claim that Gutwine was so biased as to deny Plaintiff a fundamentally fair hearing.

Nevertheless, the other defects Plaintiff alleges—that Gutwine denied without explanation his requests to present witnesses and documents, and that his inmate assistant failed to marshal any such evidence while Plaintiff was incapacitated in the SHU—may provide a viable basis for a due process claim.

A prisoner facing a loss of liberty has a qualified "right . . . to call and present witnesses and documentary evidence in his defense before the disciplinary board." Ponte v. Real, 471 U.S. 491, 495 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563–66 (1974)). Institutional interests in safety and "swift discipline in individual cases" give prison officials the "discretion to keep the hearing within reasonable limits and to refuse to call witnesses" when doing so "may create a risk of reprisal or undermine authority." Id. Thus, a hearing officer may deny a request to call a witness "on the basis of irrelevance or lack of necessity," Scott v. Kelly, 962 F.2d 145, 147 (2d Cir. 1992), and may "limit access to other inmates to collect statements or to compile other documentary evidence," Ponte, 471 U.S. at 495. "Courts will not . . . second guess the [reasonable] judgment of prison officials with respect to such matters." Sira, 380 F.3d at 75. Still, "prison officials who decide to circumscribe inmates' procedural rights at disciplinary proceedings must offer a reasonable justification for their actions, if not contemporaneously, then when challenged in a court action." Id.; Ponte, 471 U.S. at 492 (holding that due process "requires that prison officials at some point state their reason for refusing to call witnesses requested by an inmate at a disciplinary hearing"). "The burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but upon the official to prove the rationality of [his or her] position." Kingsley v. Bureau of Prisons, 937 F.2d 26, 30–31 (2d Cir. 1991).

In addition, prisoners who are confined to the SHU and "unable to 'marshal evidence and present a defense'" have a right to "be assigned to the inmate [or staff member] to act as his surrogate—to do what the inmate would have done were he able." Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993) (quoting Eng v. Coughlin, 858 F.2d 889, 898 (2d Cir. 1988))."[S]uch help certainly should include gathering evidence, obtaining documents and relevant tapes, and

interviewing witnesses"—the investigatory tasks which the inmate, were he able, could perform for himself." <u>Eng</u>, 858 F.2d at 898. Furthermore:

> The assistance must be provided in good faith and in the best interests of the inmate. "For example, an assistant . . . who is requested to interview a group of prisoners too numerous to interview must attempt to determine independently who the most relevant witnesses might be and to interview them.

<u>Id.</u> "[A]n assigned assistant who does nothing to assist a disabled prisoner—one who is segregated from the general prison population—has failed to accord the prisoner his limited constitutional due process right of assistance." <u>Id.</u>

The proposed Amended Complaint plausibly alleges that before the hearing, Plaintiff's staff inmate assistant declined to interview witnesses or retrieve documents, and that at the hearing, Gutwine denied Plaintiff's requests to call witnesses. Am. Compl. at 71, ¶¶ 122(B)–124. Neither defendant offered any legitimate reason for their decisions. <u>Id.</u> Thus, Plaintiff appears to state a claim that the inmate assistant (who is not identified) and Gutwine prevented Plaintiff from marshaling witnesses and evidence in his defense and did so without justification.

Nevertheless, Plaintiff's due process claims may face another hurdle. It is "inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial." <u>Powell v. Coughlin</u>, 953 F.2d 744, 750 (2d Cir. 1991). Since it is not clear from the Proposed Amended Complaint why any of the requested documents or witnesses were relevant to Plaintiff's case, the Court cannot determine whether Gutwine may have acquitted Plaintiff if he had been allowed to present the evidence he requested. Still, it appears reasonably likely that Plaintiff will be able to clarify the relevance of the suppressed evidence and witnesses in his

revised Amended Complaint. Therefore, Court will allow him to attempt to replead his due process claim against Gutwine and the inmate assistant in his revised amended complaint.

That said, the Court expresses no opinion on whether Plaintiff's present allegations, which do not show prejudice, state a due process claim. It may indeed be sufficient for Plaintiff to plead what he already does: that the staff assistant and Gutwine prevented Plaintiff from presenting the requested witnesses and evidence and did so without justification. See Chavis v. Zodlow, 128 F. App'x 800, 805 (2d Cir. 2005) (denying pre-Twombly motion to dismiss because prisoner was denied opportunity to call witnesses; not requiring prisoner to plead prejudice). In other words, it is possible that "harmless error" is an affirmative defense; if so, it would be incumbent on prison officials to show it "clear from the face of the complaint and matters of which the court may take judicial notice" that any such errors were harmless. Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 (2d Cir. 2014) (describing standard for dismissal based on affirmative defense). Indeed, in an appeal from or collateral attack on a criminal conviction, the state has the burden to show that any constitutional error was harmless. Lainfiesta v. Artuz, 253 F.3d 151, 158 (2d Cir. 2001) (holding that "[w]hen evaluating presumptively correct convictions on collateral *habeas* review" [t]he burden of persuasion is on the government" to show "harmless error"); Chapman v. California, 386 U.S. 18, 24 (1967) (holding that on direct review of a criminal conviction the state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.").

On the other hand, to show that the state unconstitutionally suppressed evidence in the first place, even a criminal defendant must show that the suppression "deprive[d] [him] of a fair trial." United States v. Bagley, 473 U.S. 667, 674 (1985). Therefore, he must demonstrate "a

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433 (1995). Likewise, a criminal defendant alleging his attorney was unconstitutionally inadequate must show that "any deficiencies in counsel's performance [were] prejudicial to the defense," meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 691–92 (1984). Accordingly, the Court's tentative view is that to state a due process claim based on the suppression of witnesses or evidence at his disciplinary hearing, Plaintiff must plead facts showing that the evidence and testimony the hearing officer suppressed, or that his inmate assistant failed to marshal, would have been reasonably likely to change the outcome of the hearing. Accord Sawyer v. Prack, No. 14-CV-1198, 2016 WL 5440596, at *12 (N.D.N.Y. July 29, 2016), adopted, No. 14-CV-1198, 2016 WL 5415790 (N.D.N.Y. Sept. 28, 2016) (dismissing due process claim because Plaintiff failed to "demonstrate prejudice and non-harmless error from a disciplinary hearing officer's refusal to ask that potential witness to participate in the hearing"); Hinton v. Prack, No. 12-CV-1844, 2014 WL 4627120, at *12 (N.D.N.Y. Sept. 11, 2014) (dismissing due process claim based on unexplained denial of witnesses "because Plaintiff failed to allege, in any fashion, how he was prejudiced").

The issue of who must show prejudice (or lack thereof) will be moot, and the due process claims will survive, if Plaintiff explains more clearly in his revised amended complaint why the suppressed evidence could have changed the outcome of his disciplinary hearing. Therefore, the Court will not decide now whether Plaintiff must plead prejudice to state a viable claim that the

hearing officer's exclusion of witnesses and documents violated the Due Process Clause. It will assess such claims based on any allegations supporting them in any revised amended complaint.

5. *Access-to-Courts Claim Against* Bernier

Plaintiff's "access to courts" claim against Bernier concerns video footage of Plaintiff's disciplinary hearing, including the "off-the-record" conversation with Gutwine. Plaintiff alleges that he requested copies of the video footage to support his petition for judicial review of the hearing outcome under Article 78 of the New York Civil Practice Law and Rules, but that Bernier withheld that footage, Obj. at 13; Am. Compl. at 88, ¶ 136. The state court ultimately denied Plaintiff's petition, stating that it "did not find that petitioner['s] claims that he was denied the right to call witnesses and present documentary evidence demonstrated a violation of his due process rights." Id. ¶ 136(D).

The Constitution guarantees prisoners "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis v. Casey, 518 U.S. 343, 351 (1996). To establish a constitutional claim for denying access to the courts, a plaintiff must show that the defendant acted deliberately and maliciously, Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003), and "hindered" the plaintiff's efforts to pursue a "non-frivolous" legal claim, Lewis, 518 U.S. at 353–54. "Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives [the plaintiff] of something of value—arguable claims are settled, bought, and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." Id. at 353 n.3.

Plaintiff does not explain how the video footage might have changed the state court's conclusion that the exclusion of witnesses and documentary evidence from his hearing was constitutional. Am. Compl. at 90, ¶ 136(D). Therefore, he does not plausibly allege that Bernier "hindered" his case in state court. Lewis, 518 U.S. at 353–54. And the conversation Plaintiff describes in his Amended Complaint did not even "arguably" support his claim that Gutwine was unconstitutionally biased. Id. Accordingly, even if Bernier withheld the video of that conversation, she did not violate Plaintiff's right to access the courts.

6.    *Eighth Amendment Medical Indifference Claim Against Michele Byno*

Plaintiff's proposed Amended Complaint would also revive his Eighth Amendment claim that by withholding Plaintiff's mental health medication ("Romeron and Celexa") from October 14 to 30, 2014, Byno was deliberately indifferent to the "substantial risk of serious harm" posed by Plaintiff's depression. Obj. at 13; Am. Compl. at 39–43, ¶¶ 81–83.

In its November Order, the Court concluded that withholding Plaintiff's depression medication for sixteen days plausibly posed a "substantial risk of serious harm," but that Plaintiff had "not pleaded facts suggesting that Byno was aware that withholding . . . medication would result in [such] an excessive risk to Plaintiff's health or that [she] acted with the necessary culpable state of mind." Nov. Order at 21. Now, Plaintiff alleges that he told Byno at his Upstate intake on May 3, 2014 "about his previous suicide attempts before arriving at Upstate," had "actually . . . just arrived from Downstate C.F. mental health observation cell for trying to hang himself," and that he "felt homicidal and suicidal." Am. Compl. at 41, ¶ 83(A)(2). After Heath Baker and Marinelli allegedly discontinued Plaintiff's medical health medication in June 2014, Plaintiff attempted suicide again, and on September 1, 2014, he told Byno that "my mental health

meds being discontinued . . . was a factor for me trying to kill myself." Id. ¶ 83(A)(4). Moreover, although Byno had stopped supplying Plaintiff's pills and told him on October 16, 2014 that they had been "discontinued," she told prison administrators that he "ha[d] been receiving [his] medication on a regular basis" during the same period. Am. Compl. at 39–40, ¶¶ 82, 83(A)(5)–(6); see also Dkt. No. 28-3 at 31 ("Exhibit N") (letter from New York Office of Mental Health stating that "nursing" staff at Upstate so indicated).

Byno's awareness of Plaintiff's recent history of suicide attempts when Plaintiff was denied medication, and dissimulation to hide the sixteen-day gap in Plaintiff's medication in October 2014, would provide plausible grounds to infer that she possessed the culpable mental state required to violate the Eighth Amendment. Therefore, Plaintiff's Eighth Amendment claim against her is not futile.

      *7.*    *Eighth and First Amendment Claims Against Heath Baker*

           *i. Shingles*

Plaintiff asserts that in misdiagnosing Plaintiff's shingles as "stretch marks" in October 2014 and failing to treat them, nurse Heath Baker "was deliberately indifferent to Plaintiff['s] serious medical needs" in retaliation for Plaintiff's filing grievances, which violated his First and Eighth Amendment rights. Obj. at 12–13 (citing Am. Compl. ¶¶ 77–80 and numerous exhibits).

Plaintiff alleges that "around May 19, 2014," Baker learned that Plaintiff filed grievances against him on May 10, 13, and 14 for allegedly denying Plaintiff medical treatment. Am. Compl. at 36–38, ¶¶ 80(F)(2)–(5), (10); Dkt. No. 28-3 at 12–13 ("Exhibit E") (grievance review letter stating that Baker "saw the grievant at sick call on 5/7/14, 5/12/14, 5/14/14, and 5/20/14").[7]

_____

[7] Plaintiff believes that Baker learned about another grievance Plaintiff filed against Baker in September 2014. Am. Compl. at 38, ¶ 80(F)(12). He cites a letter stating that "RN

Burton, 664 F. Supp. 2d at 367 (noting that grievances are protected activities). As explained

earlier, grievances are protected activities, and courts have found it "plausible that a denial of

medical evaluation, treatment, and adequate pain medication would suffice to deter a similarly

situated individual of ordinary firmness from filing a constitutionally protected grievance against

a prison doctor." Id. at 367. Therefore, Plaintiff's allegations against Baker regarding his shingles

satisfy the first two elements of a retaliation claim.

However, Plaintiff's allegations do not suggest that Baker intentionally mis-diagnosed his

shingles because of the grievance filed five months earlier. True, a "plaintiff can establish a

causal connection that suggests retaliation by showing that [the] protected activity was close in

time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). But to support

an inference of retaliatory intent on its own, without other evidence, "the [temporal] proximity

must be 'very close.'" Dhar v. City of New York, 655 F. App'x 864, 866 (2d Cir. 2016) (citing

Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)); compare Hollander v. Am.

Cyanamid Co., 895 F.2d 80, 85–86 (2d Cir. 1990) (holding that there was insufficient evidence

of a "causal nexus" when the only evidence was temporal and there was a three-and-a-half-month

lapse between the complaint and the alleged adverse action) with Espinal, 558 F.3d at 122, 129

(finding lapse of six months supported retaliation claim, where facts suggested that officers

"waited to exact their retaliation at an opportune time" to beat plaintiff, and told him that "this is

what happens to [i]nmates when they submit law suits against us"). And there is reason to

demand a particularly close proximity in this case, where Plaintiff admits that Baker examined

---

Baker assessed the grievant on 9/10/14 for claims of sexual assault by staff." Am. Compl. at 38,
¶80(F)(12) (citing Dkt. No. 28-3 at 29 ("Exhibit M"). The fact that the writers knew this
information, which was presumably available in Plaintiff's medical records, does not suggest
that they informed Baker of Plaintiff's grievance.

the rash but asserts that he mis-diagnosed it. "Determinations made by medical providers within their discretion are given a 'presumption of correctness' when it concerns the care and safety of patients." Banks v. Annucci, 48 F. Supp. 3d 394, 409 (N.D.N.Y. 2014). The fact that Baker's alleged mis-diagnosis came five months after the grievance is insufficient to raise a "reasonable expectation" that Plaintiff will discover evidence to overcome that presumption and establish retaliatory intent. Twombly, 550 U.S. at 556. Therefore, the First Amendment retaliation claim against Baker is futile.

Given that same "presumption of correctness," Banks, 48 F. Supp. 3d at 409, the facts in the proposed Amended Complaint also fail to show that Baker "consciously disregard[ed] a substantial risk of serious harm" to Plaintiff's health, Farmer, 511 U.S. at 839, or even that Plaintiff was denied adequate care, so as to violate the Eighth Amendment. Salahuddin, 467 F.3d at 279. Even if Baker misdiagnosed Plaintiff's shingles symptoms, Plaintiff concedes that prison medical staff treated the virus after four days, Am. Compl. at 33, ¶ 78, and provides no facts suggesting "that the delay . . . caused or exacerbated the infection, caused him extreme pain, or caused any permanent harm," Frith, 203 F. Supp. 3d at 390. As with his infected bite, Plaintiff's general statements that the shingles caused "unbearable pain," Am. Comp. at 33, ¶ 80, in those four days are insufficient.  Gomez, 649 F. App'x at 96; Frith, 203 F. Supp. 3d at 389. Accordingly, any Eighth Amendment claim based on Baker's delayed treatment for Plaintiff's shingles would fail.

ii.  *Mental Health*

The Objections also reference claims that in May and June, 2014, Baker was deliberately indifferent to Plaintiff's mental health needs. Obj. at 10–11; see also Nov. Order at 19–21. The

Court previously found that the mental health-related allegations would survive sua sponte screening if they were not time-barred. Nov. Order at 19. Defendants do not object to the Magistrate Judge's finding that the proposed Amended Complaint sets forth a potential basis to toll the statute of limitations with respect to those claims. Therefore, the Court adopts that finding.

### iii. Rash, Acne, Fungus

Plaintiff also alleges that Baker ignored conditions in "May and June," which may refer to Plaintiff's facial acne, a rash on his thigh, and/or a foot fungus. Obj. at 12; see also Nov. Order at 22. However, he points to no allegations in the Amended Complaint that would show that his acne, rash, or fungus constituted "serious medical conditions," as required to support an Eighth Amendment violation. Nov. Order at 22 (citing Thompson v. Carlsen, No. 08-CV-965, 2010 WL 3584409, at *6 (N.D.N.Y. Aug. 16, 2010)). The facts do not indicate that they were "'condition[s] of urgency' that may result in 'degeneration' or 'extreme pain,'" meaning that they do not state an Eighth Amendment claim. Chance, 143 F.3d at 702 (citation omitted). Moreover, although Plaintiff refers to Baker's actions in "May and June," 2014, Plaintiff asserts that Baker decided that the acne, fungus, and rash did not require treatment on May 14, 2014, around five days before Baker learned of Plaintiff's grievances against him. Am. Compl. ¶¶ 80(F)(10). Thus, based on those allegations, Baker's decisions concerning those physical conditions were not First Amendment retaliation, either. As such, they fail to state a claim for relief.

8.      *Supervisory Liability Claims*

        *i. Nancy Smith*

Plaintiff claims that Nancy Smith violated his First and Eighth Amendment rights by failing to correct Baker's retaliatory indifference to Plaintiff's acne, rash, fungus, and shingles. Specifically, Plaintiff asserts that Smith, like Baker, was "deliberate[ly] [indifferent] to Plaintiff['s] serious medical needs in retaliation for filing multiple grievances." Am. Compl. at 35, ¶ 80(F).

To state an Eighth Amendment claim based on a supervisor's acquiescence in subordinates' unconstitutional conduct alleged in a grievance, Plaintiff's claim must meet the same elements as it would against a line officer; the Amended Complaint must show that the supervisor "knew of and disregarded and excessive risk to [Plaintiff's] heath or safety." Turkmen v. Hasty, 789 F.3d 218, 250 (2d Cir. 2015), rev'd on other grounds, Ziglar v. Abbasi, 137 S. Ct. 1843 (2017); see also Zenon v. Downey, No. 18-CV-458, 2018 WL 6702851, at *7 (N.D.N.Y. Dec. 20, 2018) (discussing supervisory liability in light of Iqbal and Turkman). In addition, the "constitutional violation complained of in [the] grievance must [have been] 'ongoing' . . . such that the 'supervisory official who review[ed] the grievance [could] remedy [it] directly.'" Burton, 664 F. Supp. 2d at 360. (citations omitted). "'Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate,' because the violation is not 'ongoing and the defendant has [no] opportunity to stop the violation after being informed of it.'" Id. at 361 (citation omitted).

As discussed, the failure to treat the skin conditions and fungus, and the delay in treating the shingles, did not pose a "substantial risk of serious harm" to Plaintiff's health. <u>Chance</u>, 143 F.3d at 703. Moreover, Plaintiff does not allege that his conditions persisted beyond Smith's review of his grievance regarding Baker. <u>Burton</u>, 664 F. Supp. 2d at 360. In any event, "[i]t is well established that supervisory officials are generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment." <u>Graham v. Wright</u>, No. 01-CV-9613, 2003 WL 22126764, at *1 (S.D.N.Y. Sept. 12, 2003) (citation omitted). Accordingly, Plaintiff's proposed claims against Nancy Smith based on the acne, rash, fungus, and shingles are futile.

As to the retaliation claim, Plaintiff does not list any grievance he filed against Nancy Smith; his only factual allegation against her asserts that she investigated Plaintiff's June 9, 2014 grievance against Baker concerning his rash and foot fungus before that grievance was denied. Dkt. No. 28-3 at 24–25 ("Exhibit K").[6] Plaintiff does not provide any reason to believe she retaliated against him for that complaint. <u>See</u> R. & R. at 15 (citing cases dismissing claims that corrections officers retaliated based on complaints against other officers on similar facts); <u>cf.</u> <u>Williams v. Goord</u>, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) (granting summary judgment against such a claim even though defendant took alleged adverse action three days after Plaintiff filed grievance against another officer). Therefore, Plaintiff First Amendment retaliation claim against Smith also fails.

---

[6] The grievance also complained that Baker was giving Plaintiff "the wrong mental health pills." Ex. K at 25. But as indicated earlier, the Court previously concluded that those claims would survive sua sponte review if shown to be timely and will allow Plaintiff to amend his complaint to seek to establish their timeliness. Nov. Order at 19; R. &. R. at 21.

### ii. Donald Uhler

Plaintiff also fails to resuscitate his claim that Uhler violated the Eighth Amendment by permitting inmate Reeder to "kick and bang" on Plaintiff's cell in 2016. Nov. Order at 40.

In his Amended Complaint, Plaintiff states that Reeder was "written up for kicking his door" in July 2014. Am. Compl. At 60, ¶ 104(A). Plaintiff also sent the IGRC a grievance on September 18, 2014, stating that "for the past four months" Reeder had been "bang[ing] all day and night depriving [him] of sleep and peace of mind," and requesting a transfer. Ex. S; Am. Compl. at 60, ¶ 104(B). The IGRC denied the request, and Uhler affirmed. Dkt. No. 28-3 at 45 ("Exhibit U"); see also Am .Compl. ¶ 104(B)–(C). On January 5, 2016, Plaintiff filed another grievance reporting that Reeder was "kicking and banging" again. Id. ¶ 103. The IGRC also denied that grievance and, on January 31, 2016, Plaintiff again appealed to Uhler. Id. On February 8, Corrections Officer Todd Manly came to Plaintiff's cell to investigate and heard Reeder's banging. Id. However, on March 4, 2016, Uhler affirmed the denial of the request for a transfer, finding (incorrectly) that there was "no evidence of inmate Reeder banging." Id. ¶ 104; see also Nov. Order at 40.

These allegations still fail to establish that Uhler violated Plaintiff's Eighth Amendment rights. Like the original Complaint, the Amended Complaint still does not allege that Reeder continued to deprive Plaintiff of sleep after Uhler reviewed his grievance in March 2016. Nov. Order at 40. Plaintiff does not contradict his earlier statement that Reeder's banging stopped depriving him of sleep on January 27, 2016. Compl. at 32, ¶ 89. Thus, the Court cannot infer that Uhler had a reasonable opportunity to remedy the unconstitutional conditions after he

reviewed Plaintiff's appeal between January 31 and March 4, 2016. Am. Compl. at 50– 60, ¶¶ 103–04.

Plaintiff argues that Uhler should have prevented Plaintiff from being placed next to Reeder in the first place because of the complaints concerning Reeder in 2014, "15 months prior" to the 2016 incident. Am. Comp. at 61, ¶104(C). Perhaps Ulher should have remembered those 2014 complaints, foreseen that Reeder would resume his behavior, and predicted that Plaintiff would lose sleep if placed next to Reeder again. At most, however, Ulher's lack of foresight constitutes negligence—not the criminal recklessness required to state a claim under the Eighth Amendment. Farmer, 511 U.S. at 835, 839.

Plaintiff does not direct the Court to any other factual allegations suggesting that Uhler knew of and disregarded an excessive risk to his health or safety. Turkmen, 789 F.3d at 250. Accordingly, his claims against Uhler are futile.

9.    *Sexual Harassment Claims Against Nelson*

Plaintiff attempts to reallege that Nelson's comments at his cell on April 21, 2016—attempting to induce him to expose his penis—violated the Eighth Amendment. "There has been no case" in the Second Circuit "in which a plaintiff ha[s] established an actionable [Eighth Amendment] claim of sexual harassment . . . without having physical contact with the alleged perpetrator, or without, at the very least, alleging egregious sexual conduct." Holland v. City of New York, 197 F. Supp. 3d 529, 547 (S.D.N.Y. 2016). Plaintiff argues that Nelson's remarks are "egregious" because there were "many incidents of sexual misconduct, including forceful sexual activity . . . unsolicited touching, and sexual comments" at Upstate, "where sexual assaults of prisoners was well known but inadequately addressed." Obj. at 14. As

described earlier, the incidents of unprovoked physical violence against Plaintiff, such as the alleged 2014 sexual assault by Mr. Gokey and other officers, would violate the Eighth Amendment on their own. Crawford, 796 F.3d at 257–59. However, Plaintiff does not allege that Nelson was aware of any of these incidents. And even if she was, her alleged remarks on April 21, 2016 would not state a claim. Unlike the physical abuse alleged in Crawford and Boddie, Nelson's alleged verbal harassment, though degrading to Plaintiff, does not constitute "severe and repetitive sexual abuse" and, therefore, is not sufficiently serious to be "cruel and unusual punishment." Crawford, 796 F.3d at 256–57; see also Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002) (affirming dismissal of Eighth Amendment claim where female prison employee asked plaintiff "to have sex with her and to masturbate in front of her and other female staffers").

    *10.*    *New Claims in Amended Complaint*

Plaintiff also seeks to add several claims in his Amended Complaint that do not appear to have been asserted in his Complaint. See Am. Compl. at 222–36, ¶¶ 289–36. Neither the parties, nor the Court, nor the Magistrate Judge has addressed whether these claims are plausible. The Court need not address them here. Plaintiff may attempt to assert them in his revised Amended Complaint, subject to review by the Magistrate Judge under the standard in Foman, 371 U.S. at 182, and, if necessary, appeal to this Court.

Nevertheless, given the age of this case and the fact that discovery has not yet commenced, Plaintiff's revised Amended Complaint, which will be due thirty days from the filing of this Memorandum-Decision and Order, will be his last opportunity to amend the Complaint without showing good cause for allowing him to do so. Further motions to amend will not be freely granted.

41

### C. Motion to Show Cause

Plaintiff also filed a motion asserting that defendants Smith, Waterson, Nelson, and Bernier, should be deemed to have consented to Plaintiff's Motion to Amend and/or should be sanctioned because they served Plaintiff their Opposition to the Motion to Amend several days late. Dkt. No. 35 at 21–25 ("Motion to Show Cause").[7] He asserts that although the response was due on October 19, 2018, Defendants did not send it to him until October 22, and he did not receive it until October 25, 2018. Id. at 24.

The Motion to Show Cause is denied. Courts may excuse a late filing "after the time has expired if the party failed to act because of excusable neglect.'" S&R Dev. Estates LLC v. Town of Greenburgh, No. 16-CV-8043, 2017 WL 44854, at *2 (S.D.N.Y. Jan. 4, 2017). Four factors are considered in evaluating excusable neglect: "'[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'" Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (alterations in original) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)). Plaintiff does not allege that the delay in service prejudiced him—and the Court finds that it did not. He did not move to file a reply to Defendants' Opposition, even though he had approximately six weeks to do so before the Magistrate Judge issued the Report-Recommendation. L.R. 7.1(b)(2). The short delay in serving the Opposition did not delay judicial proceedings, and there is no evidence that Defendants acted in bad faith; they did not

---

[7] Although Plaintiff asserts that he submitted the Motion to Show Cause to the Magistrate Judge on October 29, 2018, Obj. at 17; Mot. to Show Cause at 21, the motion was not electronically filed until Plaintiff submitted a copy with his Objections. Docket.

stand to gain from the short delay in service. While Defendants have not argued that they were tardy for reasons outside their control, the Court finds that the other factors weigh against levying sanctions on Defendants or deeming the Motion to Amend unopposed.

That said, Defendants are reminded that they must serve all papers on Plaintiff before the applicable filing deadlines. L.R. 7.1(b). Plaintiff should bring any future failures to comply with this rule to the Court's attention.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 34) is **ADOPTED in part and MODIFIED in part** as described in this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Motion to Dismiss (Dkt. No. 19) is **DENIED** with respect to Plaintiff's Eighth Amendment conditions-of-confinement claim against Randel Smith and his First Amendment retaliation claim against Nelson, but **GRANTED** with respect to the Eighth Amendment medical indifference claim against Waterson; and it is further

**ORDERED**, that the Motion to Amend (Dkt. No. 28) is **DENIED without prejudice**. Plaintiff may renew his Motion to Amend with a revised proposed amended complaint that alleges **only** the following claims: (1) the First Amendment retaliation claim against Tracy Nelson, Denise Bernier, and Roxanne LeClerc; (2) the Eighth Amendment deliberate medical indifference claims against Sergeants Luc Maynard and Patrick Baker, Officer Richard Winston, mental health worker John Marinelli, Nurse Heath Baker, and Lieutenant Robert Barkman, and nurse Michele Byno based on Plaintiff's mental health needs; (3) the Eighth Amendment conditions of confinement claims against (a) Maynard, Winston, Officer Adam Gallagher,

Officer Brian Fournier, and Sergeant Richard Scott based on unsanitary conditions in Cell 13 in May 2014; (b) Sergeants Michael Eddy and Laura Gokey, Marinelli, and Randel Smith for keeping him in Cell 15 next to inmate Reeder, resulting in sleep deprivation, in May 2014; and (c) Sergeant Randel Smith for placing him in Cell 18 next to inmate Reeder in December 2015; (4) the Eighth Amendment excessive force claims against Michael Gokey, Sarah Tompkins, and the unidentified Doe guards who participated in the September 2014 and 2015 assaults on Plaintiff; (5) the First Amendment retaliation claims against (a) Tompkins and her Doe accomplices regarding the 2015 assault and false disciplinary report; and (b) Laura Gokey and Randel Smith regarding inmate Reeder; (6) the Fourteenth Amendment due process claims against Eric Gutwine and Plaintiff's Jane Doe inmate assistant regarding his December 2015 disciplinary hearing; and (7) any other claims that the Court has not already dismissed; and it is further

**ORDERED**, that Plaintiff shall file any such renewed motion to amend his complaint within thirty days of the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that any such renewed motion to amend will be Plaintiff's final opportunity to amend his Complaint without a showing of good cause; and it is further

**ORDERED**, that Plaintiff's Motion to Show Cause (Dkt. No. 35 at 21–25) is **DENIED**; and it is further

**ORDERED**, that this case continues to be referred to Magistrate Judge Andrew Baxter for full pretrial and report-recommendations concerning dispositive motions.

**IT IS SO ORDERED.**

DATED:     March 08, 2019
              Albany, New York

Lawrence E. Kahn
U.S. District Judge